# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | NO. A-18-M-155 |
| | § | (N.D. GA. NO. 18-M-210) |
| MICHAEL STEPHEN AUTRY | § | |

## ORDER

On March 28, 2018, the Court held a hearing on the government's motion to detain Michael Stephen Autry pending trial. The checklist motion was based on three assertions: the pending charge is a crime of violence, the defendant poses a serious risk of flight, and the defendant poses a serious risk of obstruction of justice or witness tampering. The government further asserted in the motion that a rebuttable presumption of detention arose from the fact that the offense was one of those enumerated in 18 U.S.C. § 3142(e)(3)(E).

After considering the evidence presented and the arguments of counsel, the Court concluded that Autry had rebutted the statutory presumption of detention, and that the government had failed to prove by a preponderance of the evidence that there are no conditions the Court could set that would reasonably assure his appearance as required, and failed to prove by clear and convincing evidence that Autry would pose a risk to the community if released. Accordingly, the Court denied the motion to detain and set conditions of release. The government has indicated its intention to seek review of this decision, and the undersigned issues this order so that the district judge will have a clear record of the Court's reasons for this decision.

The hearing lasted two hours. The Court heard the testimony of two witnesses – FBI Special Agent Jacob Baillie, called by the government, and Stephen Autry (the defendant's father), called by the defendant. The Court also took notice of the contents of the Pretrial Services Report, and

received in evidence one exhibit. The Court also considered the detailed response to the motion to detain filed by Autry. *See* Dkt. No. 10. Based on this evidence, the Court makes the following findings:

1.      There was no evidence to support the claim that Autry posed a flight risk if released. Autry's counsel filed a lengthy, detailed response to the motion to detain, cataloguing his strong ties to Texas, and the lack of any ties to any other locale. Autry was born and raised in Coleman, Texas. His parents still reside there. He has lived in the Austin area for more than a decade, and his wife and two children reside here. And though after his arrest Autry's wife filed for divorce, this means he has a very strong reason to remain in Austin to address that case, and particularly, the issue of his future ability to see his children. If he fled he could easily end up permanently losing his rights to have custodial or visitation access to his children.

2.      Autry's devotion to his family is strong. His wife has suffered a serious, disabling health condition for over five years. During this time, he has paid to have his mother-in-law move in with the family to assist in the care of his wife and children, and has taken on two or more jobs at a time (he is an RN) to support the family and the costs posed by these circumstances.

3.      Autry's ties to his parents are strong. His father is a semi-retired attorney and his mother is a retired school teacher. Both parents traveled the three hours to be present at the hearing. His father testified at the hearing, and stated that they had been planning in the near future to relocate to Austin, as both the defendant, and his sister, as well as each of their respective families, reside here. But in light of Autry's arrest, Autry's parents have decided to relocate to Austin now, obtain a rental house, and allow Autry to live with them. They stated that one of them would be with Autry "24/7." They would set the house up without computers or the internet, and agreed to act as third party custodians.

I have appointed countless third party custodians in the 18½ years I have been on the bench, and I don't believe any have been as "squeaky clean" as Autry's parents. They demonstrated a full knowledge of the charges, and a full understanding of the responsibilities of acting as custodians over Autry, and the Court has full confidence that they will assure Autry's appearance as required, and—though the Court does not find any danger to the community is posed by Autry's release—if there were a danger to the community their oversight would more than adequately address that danger.

4. When he was arrested and confronted by the search warrant for his home, Autry cooperated and accepted responsibility. Special Agent Baillie testified that the agents who questioned Autry for several hours believed him to be credible and did not believe he was hiding anything.

5. Autry has a negative net worth, and does not have the resources to flee.

6. Other than the offense conduct, the government did not present any evidence demonstrating that Autry posed a risk of danger to anyone if released. Though this was all the government offered at the hearing, the offense conduct by itself was insufficient to demonstrate a risk of danger. While the evidence showed that Autry was regularly creating new chat groups on Kik Messenger, he did so by adding users whom he was already interacting with in other groups. All of the groups were small—three or four members—and none were addressed to violence toward or solicitation of minors. There is no evidence that Autry himself created any images of children, attempted to make sexual contact with any child, or was in the business of producing child pornography. Special Agent Baillie testified that Autry's daughter was interviewed post-arrest, and made no outcry. Further, despite working as a pediatric nurse, including as a home care nurse for many years, no child has ever registered a complaint against Autry for inappropriate behavior with them.

7.      Autry has no criminal history of any kind. Indeed, his father testified that he had not even received a ticket to his knowledge. While he possessed firearms, he did so lawfully, and will relinquish those in light of the charges.

8.      Autry has no substance abuse history. Further, he sought out treatment for mental health issues (depression), which he attributes to the stresses of dealing with his wife's health problems, and the long work hours he has kept for several years as a result. Rather than ignore those issues, or attempt to self-medicate, he sought out treatment and is taking medication. This proactive behavior reduces the likelihood that he would pose a danger if released, and instead shows that he is open to seeking treatment and other resources to address problems. In this regard, Autry's father testified that Autry intends to begin participation in therapy to address his obsession with child pornography if released.

9.      The government did not offer any evidence, or make any argument, regarding the allegation in its motion to detain that Autry would pose a risk of obstruction or witness tampering if released, and therefore abandoned that argument. There is absolutely no evidence to support the claim even if it had not been abandoned.

10.     Autry is amenable to significant conditions being placed on him if released. The conditions set by the Court include home detention with a GPS monitor, the requirement that he reside with his parents—who will be third party custodians—at an approved residence in Austin. He will not be permitted to have access to computers or the internet, and may only have a phone if it does not have internet access. He agreed to abide by all of the special conditions applicable to cases involving child pornography, to report to Pretrial Services as directed, and to continue to participate in his

mental health regimen. As noted earlier, his parents agreed that one of them would be with Autry at all times.

11. In summary, Autry convincingly rebutted the presumption of detention created by 18 U.S.C. § 3142(e)(3)(E). This shifted the burden back to the government to demonstrate that Autry posed a flight risk or a risk to the community if released. The government's evidence, which reliecd entirely on the offense conduct, fell far short of that required to support detention. Indeed, it is difficult for the Court to imagine a situation in which a more convincing case overcoming the presumption of detention presented by child pornography cases could be made, and supported with such highly reliable and credible evidence. As Autry's counsel put it at the hearing, if the facts surrounding Autry are not enough to warrant setting conditions of release, then everyone charged with this offense would have to be detained. Since the Bail Reform Act does not require that result, it appears quite clearly that conditions are appropriate here.

Based on the above findings, and consistent with the directives of the Bail Reform Act, the Court concludes that there are conditions it can set that would reasonably assure the defendant's appearance as required and the safety of the community. Consistent with this finding, the Court entered its Order Setting Conditions of Release on March 28, 2018.

However, as stated in open Court on March 28, 2018, the Order Setting Conditions of Release is STAYED until midnight on April 4, 2018, to permit review of that order.

SIGNED this 2nd day of April, 2018.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE