# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | NO. A-18-M-155 |
| | § | (N.D. GA. NO. 18-M-210) |
| MICHAEL STEPHEN AUTRY | § | |

## ORDER

The Court held a preliminary hearing in this case on March 28, 2018. The complaint charges the defendant, Michael Stephen Autry, with two offenses: violation of 18 U.S.C. §§ 2252(a)(2) and 2251(d). With regard to the latter charge, Autry argues that the government has failed to carry its burden of showing probable cause, because it failed to demonstrate that Autry made, printed or published an "advertisement" or "notice" offering to receive or distribute child pornography. Autry contends the most the evidence shows is that in group messages with three or four others, most or all of which were initiated by Autry, he invited others to transmit images of child pornography, or transmitted such images himself. He contends that this falls short of the conduct made criminal by § 2251(d), as it does not amount to the "advertising" prohibited by that statute.

Though both the government and the defendant briefed the issue, there does not appear to be any case directly on point. Neither "advertisement" nor "notice" is defined in the statute. Unlike this case, which involves the equivalent of a group text, the cases mentioned in the briefs involve chat rooms, online massage boards, or peer-to-peer file sharing protocols.[1] In each of the cases, the communication at issue was made to a limited group of individuals, but a group much larger than here. Further, in each case the defendant either posted a message to the group offering images of

---

[1] *See United States v. Rowe*, 414 F.3d 271 (2nd Cir. 2005); *United States v. Grovo*, 826 F.3d 1207 (9th Cir. 2016); *United States v. Franklin*, 785 F.3d 1365 (10th Cir. 2015); *United States v. Sewell*, 513 F.3d 820 (8th Cir. 2008).

child pornography, or made available to the group a list of files with descriptions that were available for download. In these cases, the smallest group to whom these offers were made appears to be the 40-45 users in *Grovo*. *See Grovo*, 826 F.3d at 1212. *Franklin* involved 108 "friends," *Sewell* involved files apparently available to anyone connected to the Kazaa PTP network, and *Rowe* involved a message posted to a chat room of indeterminate size, but which is described as "a room which [the detective has] known from prior [experience] where there is trading of child porn," and which "is used basically in the pedophile community." *See Franklin*, 785 F.3d at 1369; *Sewell*, 513 F.3d at 821; and *Rowe*, 414 F.3d at 273.

The distinctions between these cases and the present case are several. First, the communications that the government here contends were "advertisements" or "notices" were made in a group message to a group of three to four users, all of whom were individuals that Autry was already communicating with about child pornography. (From what the Court understood at the hearing, a group message on the Kik Messenger service is the effective equivalent of a group text on a traditional smart phone.) Second, in the reported cases once the defendant made the other members of the group aware of the availability of child pornography, a member still had to either visit a server or download a file to receive it. Thus, the initial offer or notice acted very much like a traditional advertisement. "I've got this available; come get it if you're interested." Here, anything posted to the Kik group by any member was immediately available to all participants. In other words, Autry did not post something to the effect of "let me know if you'd like to receive some child porn," and then follow that up with a transmission when he received a request. Rather, Autry simply posted pornography to the group, or had access to anything posted by any of the other participants in the group. Thus, the government's contention is that Autry's initial creation of a new group

2

message was itself the "advertisement" or "notice" offering to receive or share child pornography, while Autry contends no such advertisement was made, but rather the parties were simply sending and receiving child pornography.

At the hearing, the Court asked counsel for the government if a single email sent to a single recipient offering to transmit or receive child pornography would run afoul of § 2251(d)(1). The government contended that it would. Thus, if John Doe emails his friend Tom Roe, and says, "Hey, if you have any naked pictures of pre-teens I'd love to see them," the government's position is that email would violate § 2251(d)(1).[2] Whether or not that is true is a significant question. A violation of § 2252(a)(2)—which prohibits the receipt or distribution of child pornography—carries with it a punishment range of 5-20 years of imprisonment, while a violation of the advertising statute is punishable by 15-30 years of imprisonment. As Autry notes in his brief, the legislative history surrounding the passage of 2251(d), explains the reason for this severe penalty as follows:

> The advertising of child pornography has been a very serious problem. There are a number of magazines and newsletters which serve to advertise the availability of child pornography or to offer children to participate in sexually explicit conduct. Control of advertising of this type was the first recommendation of the Senate Permanent Subcommittee on Investigations.

H.R. Rep. No. 910, 99th Cong., 2nd Sess. 1986 at *3 (attached as addendum to Dkt. No. 13). Plainly, what Autry is alleged to have done here is a far cry from an advertisement in a magazine or newsletter. Instead, we have an individual who had (apparently independently) located other like-minded individuals and, in groups of three or four, was sharing child pornography directly with them.

---

[2]More straightforwardly, this behavior would seem to constitute an attempt to receive or possess child pornography, prohibited under §§ 2252(a)(2) and (a)(4), rather than an advertisement or notice seeking to receive or transmit child pornography.

The government's interpretation of the statute posited at the hearing leads to an anomalous result: ***offering*** to transmit or receive child pornography, even when it is done in a single person-to-person communication, is significantly more serious than actually ***transmitting*** or ***receiving*** child pornography. In other words, if Autry had created a group message to three others, and invited them to post child pornography to the group, under the government's interpretation of the statute he would be facing at least 15, and up to 30 years in prison—***even if no one ever responded by posting any images***. But if instead he actually received an image of child pornography electronically, unrelated to any group message, the minimum sentence would be 5 years (or ten years less), and the maximum sentence would be 20 years (also ten years less). It is difficult to square this result with the stated legislative intent, and suggests that the government is reading the statute too broadly. The undersigned concurs with the court in *Grovo* when it concluded that while the dictionary definition of "advertisement" does not limit it solely to public postings, the fact that the majority of such definitions require some public element, suggest that "an 'advertisement' under § 2251(d) requires some public component." *Grovo*, 826 F.3d at 1218. While this may be able to be met by publication of a notice to a "select" subset of the public, it cannot be met by one person simply expressing to another person an interest in receiving child pornography.

The question here is whether the advertisement element is met by expressing an interest to receive child pornography not to one person, but instead to three or four people. There does not appear to be a clear answer to this question in the existing case law. There would at best appear to be a sliding scale with clear, openly public advertising on one end, and direct person-to-person communication on the other. Though it is not clear to the undersigned precisely where the line should be drawn on the minimum needed to constitute advertising for 2251(d)(1) purposes, the Court

4

concludes that the line is somewhere closer to the notice posted to the 40-45 member group discussed in *Grovo* than it is to the facts presented here. Accordingly, the Court concludes that the government has failed to demonstrate the "advertisement" or "notice" element of a § 2251(d) offense in this case, and the charge against Autry for violating 18 U.S.C. § 2251(d)(2) is DISMISSED WITHOUT PREJUDICE.

SIGNED this 3rd day of April, 2018.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE